**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

GILBERT ROMERO,

        Plaintiff,

v.                                                                No. 11-cv-00895 CG

MICHEAL J. ASTRUE,
Commissioner of the
Social Security Administration,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

       THIS MATTER comes before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision*, (Doc. 21) with Plaintiff's *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* (collectively "Motion"), (Doc. 22), *Defendant's Response to Plaintiff's Motion to Reverse or Remand the Administrative Agency Decision* ("Response"), (Doc. 23), and Plaintiff's *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* ("Reply"), (Doc. 24). The parties consented to have the undersigned magistrate judge conduct all proceedings and enter final judgment. (Docs. 6, 12).

       The Court has reviewed Plaintiff's Motion, the Response, Reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record ("AR"). Because key findings in the Commissioner's final decision are not supported by substantial evidence, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court will GRANT Plaintiff's Motion and REMAND the case for further proceedings consistent with this Memorandum Opinion and Order.

I.   **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the Administrative Law Judge's ("ALJ") findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported

by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981. The Tenth Circuit, however, has held that in some situations, a court must consider evidence beyond that which was considered by the ALJ. *See Martinez v. Barnhart*, 444 F.3d 1201, 1207–08 (10th Cir. 2006); *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994). Pursuant to 20 C.F.R. § 404.970(b), any new and material evidence that relates to the period on or before the date of the ALJ's decision shall be considered by the Appeals Council in determining whether to review the ALJ's decision. If the Appeals Council denies review, the ALJ's decision becomes the Commissioner's final decision. *O'Dell*, 44 F.3d at 858 (citing 20 C.F.R. § 404.981). Because a court reviews the final decision based on "the record as a whole," it will consider the evidence that was before the ALJ as well as the new and material evidence that was before the Appeals Council. *Id.* (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). A court reviews the Commissioner's decision, which is the ALJ's decision, and not the Appeals Council's denial of review. *See id.* Considering all of the evidence in the administrative record, a court decides whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Maes*, 522 F.3d at 1096.

### II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any

3

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 42 U.S.C. 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).   In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity;" that (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

### III.   Background

#### a. The ALJ's Decision

On October 22, 2007, Plaintiff Gilbert A. Romero filed a Title II application for a period of disability and disability insurance benefits (DIB) and a Title XVI application for supplemental security income (SSI) payments. (AR at 13). In both of his applications, Mr.

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

Romero alleged a disability onset date of October 19, 2007.  (AR at 13).  Mr. Romero's claims were denied initially on March 3, 2008 and upon reconsideration on June 2, 2008.  (AR at 13).  Mr. Romero requested a hearing, which took place before ALJ Larry C. Marcy on May 18, 2010.  (AR at 13).  At step five of the five-step sequential evaluation process, ALJ Marcy found that Mr. Romero was not disabled.  (AR at 23).

At step one, the ALJ found that Mr. Romero had not been engaged in substantial gainful activity since his alleged onset date of October 19, 2007.  (AR at 15).  Proceeding to the next step, the ALJ found that Mr. Romero had the following severe impairments: back disorder, diabetes, mild to moderate situational depression, and carpal tunnel syndrome.  (AR at 15).  Also at step two, the ALJ found that Mr. Romero's combined impairments were severe in that his ability to perform basic work activities was significantly limited.  (AR at 15).

At step three, the ALJ determined that Mr. Romero did not have an impairment or combination of impairments that meets or equals one of the "Listings" of presumptively disabling impairments.  (AR at 15).  In making his decision, the ALJ considered the listed impairments that "address the musculoskeletal, endocrine, and neurological systems as well as the mental disorders."  (AR at 16).  The ALJ also considered the effects of obesity.  (AR at 16).  The ALJ found that Mr. Romero could ambulate effectively and perform fine and gross manipulation.  (AR at 16).  He also found that there was no electrodiagnostic evidence of nerve damage, hospitalizations for Mr. Romero's diabetes, or evidence of significant organ damage. (AR at 16).

The ALJ found that Mr. Romero's mental impairment did not meet the criteria listed for a severe mental impairment because his limitations were not marked. (AR at 16). At step three, the ALJ also noted that Mr. Romero had a history of lumbar and cervical disc disease; his treatment had been conservative and included physical therapy and Mr. Romero was advised to avoid heavy lifting. (AR at 17). Additionally, the ALJ considered Mr. Romero's diabetes. (AR at 17). The ALJ noted that Mr. Romero was obese and had "terrible control" of his diabetes. (AR at 17). Briefly mentioning Mr. Romero's neuropathy, the ALJ explained that the prescribed Neurontin resulted in an improvement in July 2007. (AR at 17).

Before reaching step four, the ALJ found that Mr. Romero had the residual functional capacity (RFC) to perform light work that does not require constant handling. (AR at 19). The ALJ found that Mr. Romero could "occasionally climb, balance, stoop, kneel, crouch, and crawl . . . [and] is able to understand, remember, and carry out simple tasks." (AR at 19). The ALJ explained that he gave the statements of Mr. Romero and his wife "significant benefit of doubt in light of the absence of objective medical evidence of record." (AR at 21). He recounted much of Mr. Romero's testimony at the hearing, which detailed Mr. Romero's physical and mental limitations. The ALJ also explained that he gave the opinion evidence of Dr. Trujillo, a consulting physician, little weight in light of a statement submitted by Ms. Romero that Dr. Trujillo was rude and unprofessional. (AR at 21).

The ALJ gave some weight to the Disability Determination Services' conclusion that Mr. Romero could perform light work. (AR at 22). He also gave some weight to the opinion evidence regarding Mr. Romero's physical impairments from Mr. Romero's treating

physician, Dr. Lopez. (AR at 22). The ALJ stated that Dr. Lopez's statements were not supported by clinical or objective diagnostic findings; additionally, the ALJ explained that Dr. Lopez had noted non-compliance on the part of Mr. Romero. (AR at 22). The ALJ gave no weight to Dr. Lopez's opinion regarding Mr. Romero's mental impairments. (AR at 22). He explained that Dr. Lopez's indication that Mr. Romero could not function outside of a highly supportive living arrangement is a restriction that applies only to individuals with significant cognitive deficits, which he cursorily explained that Mr. Romero did not have. (AR at 22).

At step four, the ALJ determined that Mr. Romero could not return to his past work as a school bus driver or backhoe operator. (AR at 22). The Vocational Expert ("VE") testified at the hearing that Mr. Romero's RFC precluded a return to his past relevant work. (AR at 22; 48). At step five, the ALJ found, based on the VE's testimony, that an individual with Mr. Romero's age, education, work experience, and RFC could perform a job such as a housekeeper/cleaner, a cashier III, or a bench assembler. (AR at 23, 48-49).

Mr. Romero requested review of the ALJ's decision by the Appeals Council on July 7, 2010. (AR at 9). He also submitted new medical evidence, including a consultative examination report by John Vigil, MD, (AR at 368-377), an evaluation report by neurologist Michael Batan, MD (AR at 380-382), a note of concurrence with Dr. Vigil's report from Mr. Romero's treating physician, G. Michael Lopez, MD (AR at 394), and a Physical Residual Functional Capacity Assessment completed by John Pataki, MD (AR at 410-418). The Appeals Council made the new evidence part of the administrative record but denied review because it found no reason under the rules to review the ALJ's decision. (AR at 1).

### b. *Medical Evidence*

The record reflects that Mr. Romero has been diagnosed and treated for diabetes mellitus, diabetic retinopathy, diabetic neuropathy, degenerative disc disease, bulging discs, and chronic back pain, carpal tunnel syndrome, obesity, and depression. The record also contains mention of hypertension, fibromyalgia, and a hospitalization for hypoxemia. (AR at 231, 294, 370). In 2002, Mr. Romero received a diagnosis of degenerative disc disease at L4-5. (AR at 296-304). Mr. Romero stopped working in 2004, and the record shows he has continued to suffer from chronic back pain. The record shows that Mr. Romero was seen by an ophthalmologist (AR at 201-02); an endocrinologist (AR at 206-09); a rheumatologist (AR at 283-95); an orthopedic spine surgeon (AR at 296-97); a neurologist (AR at 298-99); and an orthopedist (AR at 300).

The record contains notes from Mr. Romero's treating physician, Michael Lopez, MD, dated October 2, 2006 to October 31, 2007. (AR at 212-227). Although many of these handwritten notes are illegible, early in the covered time period, Dr. Lopez noted that Mr. Romero had poor dietary compliance. (AR at 223). Several notes from July 2007 – October 2007 indicate that Dr. Lopez was treating Mr. Romero for neuropathy. (AR at 213 – 221). In October, 2009, Dr. Lopez also filled out a Medical Assessment of Ability to Do Work-Related Activities (Mental), indicating that Mr. Romero had a marked limitation on his ability to complete a normal workday and workweek without interruptions from psychological based symptoms and a marked limitation on his ability to perform at a consistent pace. (AR at 243). Dr. Lopez also indicated that Mr. Romero had several moderate limitations, including his ability to carry out detailed instructions, to remember locations and work-like procedures, to maintain attention and concentration for extended

8

periods of time, to respond appropriately to changes in the work place, and to be aware of normal hazards and take adequate precautions, among others. (AR at 243). Dr. Lopez also checked several boxes on the "12.04 Affective Disorders" form, indicating that Mr. Romero had a

> medically documented persistence of . . .depressive syndrome characterized by. . . pervasive loss of interest in almost all activities. . . appetite disturbance with change in weight. . .sleep disturbance. . . decreased energy. . . difficulty concentrating or thinking. . .thoughts of suicide; . . . .resulting in. . . marked restriction of activities of daily living. . . [and] marked difficulties in maintaining social functioning.

(AR at 246).

Dr. Lopez also completed a Medical Assessment of Ability to Do Work-Related Activities (Non-Physical) and a Medical Assessment of Ability to Do Work-Related Activities (Physical) in February 2010. (AR at 276-77). On these forms, Dr. Lopez indicated that Mr. Romero's pain was severe; that he has to rest or lie down at regular intervals because of his pain and/or fatigue; that he had moderate limitations on his ability to maintain concentration for two hour segments, maintain regular attendance, maintain physical effort for long periods without a need to decrease activity or pace, or rest intermittently, and to make simple work-related decisions, among other limitations. (AR at 276). Dr. Lopez indicated that Mr. Romero can occasionally lift less than twenty pounds; frequently lift less than ten pounds, stand and/or walk less than two hours in an eight hour workday, must periodically alternate sitting and standing to relieve pain or discomfort, has limited ability to push and/or pull in his upper and lower extremities, has limitations on his manipulative abilities, and can occasionally kneel, stoop, crouch, and crawl. (AR at 277).

On February 20, 2008, Martin Trujillo, MD performed a consultative examination on Mr. Romero. (AR at 229-231). Dr. Trujillo's impression was that Mr. Romero's

impairments included: obesity, diabetes mellitus, with diabetic retinopathy and neuropathy, untreated hypertension, a history of low back pain secondary to injury with a diagnosis of bulging discs with no significant evidence of radiculopathy, and carpal tunnel syndrome that is worse in his right wrist than his left. (AR at 231). Dr. Trujillo also stated that Mr. Romero could "perform light duty with a lifting limit of 20 lbs." (AR at 231). Additionally, Dr. Trujillo stated that Mr. Romero "had a very poor effort with range of motion." (AR at 230).

A consultative examiner for the Commissioner, David P. Green, MD, completed a Physical Residual Functional Capacity Assessment. (AR at 232-39). Dr. Green checked boxes indicating that, based on his review of Mr. Romero's medical records, Mr. Romero could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for a total of six hours in an eight hour workday, sit for about six hours in an eight hour workday, and was not limited in his ability to push and/or pull in his upper or lower extremities. (AR at 233). Dr. Green noted that Mr. Romero may have some neuropathy and had reported numbness in his feet, though no abnormalities had been noted during a "check-off" exam with an endocrinologist in 2007. (AR at 234). Dr. Green appeared to rely heavily on Dr. Trujillo's consultative examination report, citing Dr. Trujillo's note that Mr. Romero had a very poor effort with range of motion testing. (AR at 234). Dr. Green added that evaluating whether the severity of Mr. Romero's symptoms is consistent with the evidence was difficult because of Mr. Romero's "suboptimal effort and pain behavior at the CE exam." (AR at 234).

On July 13, 2012, John Vigil, MD, examined Mr. Romero; Dr. Vigil also spent time reviewing Mr. Romero's medical records. (AR at 369). Dr. Vigil reviewed x-rays and MRIs

of Mr. Romero's back; he found that an MRI from 2004 showed "severe degenerative disc disease;" and one from 2009 showed a disc bulging at L4-5 with "effacement of the thecal sac and moderate to severe facet arthropathy on the right at L5-S1." (AR at 374). Dr. Vigil's reported that his opinion was that Mr. Romero was permanently disabled and "unable to do even sedentary work secondary to his multiple medical problem[s]." (AR at 374). Dr. Vigil found that Mr. Romero's medical problems included: chronic and disabling lower back pain with radicular symptoms, degenerative arthritis causing pain in his knees and elbows, bilateral epicondylitis, bilateral carpal tunnel syndrome, chronic pain in his extremities secondary to diabetic neuropathy, diabetes mellitus, GERD (gastroesophageal reflux disease), hypertension, hyperlipidemia, and depression. (AR at 374). Additionally, Dr. Vigil opined that Mr. Romero had been significantly disabled since September 2004. (AR at 375). Treating physician Dr. Lopez concurred with Dr. Vigil's findings and conclusions. (AR at 394).

On July 30, 2010, Mr. Romero underwent an examination and electrodiagnostic testing by Michael Baten, MD. (AR at 380-82). Based on the results of nerve conduction studies, Dr. Baten's impression was that Mr. Romero has extremely severe diabetic polyneuropathy. (AR at 381-82). He elaborated to say that Mr. Romero has "extraordinarily severe and diffuse diabetic polyneuropathy which is particularly severe in the lower extremities but clearly significant in the upper as well . . . . This is undoubtedly responsible for his clinical findings of weakness and sensory diminishment." (AR at 382).

**IV.    Analysis**

Mr. Romero argues that the ALJ committed legal error in the determination of Mr. Romero's RFC by violating the Treating Physician Rule; the assessment of Mr. Romero's RFC is not supported by substantial evidence and the evidence submitted to the Appeals Council warrants a change in the ALJ's decision; and the ALJ's step five findings are not supported by substantial evidence because the hypothetical questions the ALJ posed to the VE did not include all of Mr. Romero's functional limitations.  (Doc. 22 at 1).  The Commissioner asserts that the ALJ properly considered the medical source opinions in determining Mr. Romero's RFC; that the Appeals Council properly considered the additional evidence; and that the ALJ's finding at step five that Mr. Romero was not disabled was proper.

   a. *Treating Physician Rule*

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are supported by the medical evidence and are consistent with the record; this is known as the "treating physician rule."  20 C.F.R. § 404.1527(d)(2); *Langley*, 373 F.3d at 1119.  The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight.  *Doyal*, 331 F.3d at 762.

Treating physician opinions – in order to receive controlling weight – must be both supported by medical evidence and consistent with the record.  If not, the opinions may not

merit *controlling weight* but still receive *deference* and must be weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. § 404.1527(c)-(d).  Not every factor is applicable in every case, however, and all six factors should not be seen as absolutely necessary.  What is absolutely necessary, though, is that the ALJ give good reasons – reasons that are "sufficiently specific to [be] clear to any subsequent reviewers" – for the weight that he ultimately assigns to the opinions.  *Langley*, 373 F.3d at 1119; *see* 20 C.F.R. § 404.1527(d)(2); *Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two steps.  First, the ALJ must find that the opinion (A) is not supported by medical evidence and/or (B) is not consistent with the record.  Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above.  Like all findings, an ALJ's findings in these two steps must be supported by substantial evidence.

In this case, the ALJ did not give controlling weight to the treating physician's opinion as to Mr. Romero's physical impairments.  Rather than defer to Dr. Lopez's opinion that Mr. Romero could not stand and/or walk for more than two hours in an eight hour

workday, he credited the opinion of Dr. Green, a consultative examiner, that Mr. Romero could stand and/or walk for a total of six hours in an eight hour workday.

In discussing the weight he gave Dr. Lopez's opinion, the ALJ first stated that Dr. Lopez's statements regarding Mr. Romero's physical impairments were not supported by "any other clinical or objective diagnostic findings." (AR at 22). This one statement appears to fulfill the obligation of the ALJ to make a finding that the treating physician's opinion does not receive controlling weight because it is not supported by objective medical evidence. The same statement also appears to be part of the ALJ's obligatory consideration of the six factors, specifically, "the degree to which the physician's opinion is supported by relevant evidence." Watkins, 350 F.3d at 1301; 20 C.F.R. § 404.1527(d). The ALJ also mentioned that Dr. Lopez noted "significant non-compliance on the part of claimant;" although the ALJ did not say so specifically, the Court construes this as a consideration of the sixth factor listed above. (AR at 22).

Although the ALJ did not have the medical evidence from Dr. Vigil and Dr. Batten when he made his decision in Mr. Romero's case, this Court must consider the entire administrative record when reviewing the ALJ's opinion. The new evidence presented to the Appeals Council was considered by that body, and is now part of the administrative record. (AR at 1). *O'Dell*, 44 F.3d at 859. This evidence includes nerve conduction studies by Dr. Batten and an examination by Dr. Vigil. Both doctors provided opinions based on clinical evidence that are consistent with Dr. Lopez's assessment of Mr. Romero's physical impairments and limitations. Therefore, the Court finds that the ALJ's assertion that Dr. Lopez's statements are not supported by "any other clinical or objective diagnostic findings" is not supported by substantial evidence.

Dr. Lopez's notes indicating that Mr. Romero had "poor dietary compliance" were another factor in the ALJ's consideration of the weight to be allocated to Dr. Lopez's opinion.  However, the ALJ did not properly develop the record to reflect whether compliance with the prescribed treatment would restore Mr. Romero's ability to engage in a substantial gainful activity or whether Mr. Romero's non-compliance was justified, as he was required to do before making a finding that Mr. Romero was not in compliance with prescribed treatment.  *See Robinson v. Barnhart*, 366 F. 3d 1078, 1083-84 (10th Cir. 2004); 20 C.F.R. §§ 404.1530 and 416.930.

The Court finds that the ALJ committed legal error in determining Mr. Romero's RFC by inadequately discussing the specific reasons for the weight given to Dr. Lopez's opinion.  The conclusory explanations he provided were not supported by substantial evidence.  Because of the ALJ's failure to follow the correct legal standards in considering the opinion of Mr. Romero's treating physician, the Court remands this case for further proceedings.

### b.  *RFC is not Supported by Substantial Evidence*

Mr. Romero asserts that the ALJ's finding that Mr. Romero has the residual functional capacity to perform light work is not supported by substantial evidence.  (Doc. 22 at 10).  Mr. Romero argues that the ALJ's failure to list Mr. Romero's diabetic neuropathy as one of his impairments in step two of the sequential evaluation process and his failure to consider it in the assessment of his RFC is not supported by substantial evidence.

In formulating a claimant's RFC, the ALJ must consider all of the claimant's symptoms and determine the extent to which these symptoms can be reasonably accepted with objective medical evidence. See 20 C.F.R. 416.929; SSRs 96-4p; SSrs 96-7p. The ALJ must therefore always consider and address medical source opinions in the record. See SSR 96-8p.

Here, the ALJ mentioned that while he gave Mr. Romero's statements about his impairments, including those in which he mentioned numbness and burning in his extremities, significant benefit of the doubt, there were "no neurological diagnostic studies such as EMG/nerve conduction studies to support the clinical diagnosis of diabetic neuropathy." (AR at 20-22). The ALJ did not list neuropathy as one of Mr. Romero's impairments, then found that Mr. Romero had the residual functional capacity to perform work activity. Although the ALJ did not have the benefit of it when he made his decision, there is now a nerve conduction study in the record that provides some objective medical evidence regarding Mr. Romero's diabetic neuropathy. (AR at 382). This medical evidence was not considered by the ALJ when determining Mr. Romero's impairments at step two, (AR at 15), and the ALJ did not consider it in his determination of Mr. Romero's RFC between steps three and four. (AR at 22). Therefore, the Court finds that the ALJ's determination of Mr. Romero's RFC is not supported by substantial evidence.

## V.    Conclusion

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ violated the Treating Physician Rule in determining Mr. Romero's RFC. The Court further finds that the assessment of Mr. Romero's RFC is not

supported by substantial evidence.  The Court does not address Mr. Romero's argument that the ALJ's finding at step five was not supported by substantial evidence because it remands for errors at earlier steps in the sequential evaluation process.

**IT IS THEREFORE ORDERED** that Mr. Romero's Motion to Reverse or Remand Administrative Agency Decision (Doc. 21) be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE